UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KENT BERNBECK, and MICHAEL WARNER, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN A. GALE, Nebraska Secretary of State, in his official capacity, <br><br> Defendant. | CASE NO. <br><br><br><br><br><br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Introduction

Plaintiffs are challenging Neb. Rev. Stat. §§ 32-617(3) and 32-618(2) because they place undue burdens on ballot access for Independent candidates for public office who are not registered members of a political party and violate Plaintiffs' rights protected by the First and Fourteenth Amendments of the United States Constitution.  The United States Supreme Court has repeatedly recognized that "third" or "minor" political parties have played an important role in U.S. history by advancing ideas the major parties often later adopted.  In addition, third parties perform two functions essential to the vitality of our democracy by protecting the right of citizens to associate to promote political beliefs, and by protecting "the right of qualified voters, regardless of their political persuasion, to

1

cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." *Anderson v. Celebreeze*, 460 U.S. 780, 787 (1983) (internal citations omitted).

## Jurisdiction and Venue

1. This Court has original jurisdiction over this case pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

2. This suit is authorized by 42 U.S.C. § 1983.

3. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the District of Nebraska pursuant to 28 U.S.C. § 1391(b).

## Parties

5. Plaintiff Kent Bernbeck is a resident and registered voter of Nebraska and resides in Douglas County. He is not affiliated with a political party and desires to run for State Treasurer as an Independent candidate.

6. Plaintiff Michael Warner is a resident and registered voter of Nebraska and resides in Lincoln. He desires to have the right to vote for Plaintiff Bernbeck as an Independent candidate.

7. Defendant John Gale is the elected and qualified Nebraska Secretary of

State and he is sued herein in his official capacity. He is the chief election officer of Nebraska and the person who must determine whether to place Plaintiff Bernbeck's name on the ballot, and how to do so. He also has the responsibility to adhere to and enforce the statutes challenged in this complaint governing access by an Independent candidate for State Treasurer. He also has supervisory authority over all election officials, is required to receive returns, canvas and certify results, certify nominations of Independent candidates, maintain election records, and assist local election officials.

The Challenged Laws and the Facts

8. Neb. Rev. Stat. § 32-617 provides:

**Nomination by petition; requirements; procedure**

(1) Petitions for nomination for partisan and nonpartisan offices shall conform to the requirements of section 32-628. Petitions shall state the office to be filled and the name and address of the candidate. Petitions for partisan office shall also indicate the party affiliation of the candidate. A sample copy of the petition shall be filed with the filing officer prior to circulation. Petitions shall be signed by registered voters residing in the district or political subdivision in which the officer is to be elected and shall be filed with the filing officer in the same manner as provided for candidate filing forms in section 32-607. Petition signers and petition circulators shall conform to the requirements of sections 32-629 and 32-630. No petition for nomination shall be filed unless there is attached thereto a receipt showing the payment of the filing fee required pursuant to section 32-608. Such petitions shall be filed by September 1 in the year of the general election.

(2) The filing officer shall verify the signatures according to section 32-631. Within three days after the signatures on a petition for nomination have been verified pursuant to such section and the filing officer has determined that pursuant to section 32-618 a sufficient number of registered voters signed the petitions, the filing officer shall notify the candidate so nominated by registered or certified mail, and the candidate shall, within five days after the date of receiving such notification, file with such officer his or her acceptance of the nomination or his or her name will not be printed on the ballot.

(3) A candidate placed on the ballot by petition shall be termed a candidate by petition. The words BY PETITION shall be printed upon the ballot after the name of each candidate by petition.

9. Neb. Rev. Stat. § 32-618 provides:

**Nomination by petition; number of signatures required**

(1) The number of signatures of registered voters needed to place the name of a candidate upon the nonpartisan ballot for the general election shall be as follows:
(a) For each nonpartisan office other than members of the Board of Regents of the University of Nebraska and board members of a Class III school district, at least ten percent of the total number of registered voters voting for Governor or President of the United States at the immediately preceding general election in the district or political subdivision in which the officer is to be elected, not to exceed two thousand;
(b) For members of the Board of Regents of the University of Nebraska, at least ten percent of the total number of registered voters voting for Governor or President of the United States at the immediately preceding general election in the regent district in which the officer is to be elected, not to exceed one thousand; and (c) For board members of a Class III school district, at least twenty percent of the total number of votes cast for the board member receiving the highest number of votes at the immediately preceding general election in the school district.

>    (2) The number of signatures of registered voters needed to place the name of a candidate for an office upon the partisan ballot for the general election shall be at least ten percent of the registered voters entitled to vote for the office.

10. The Defendant maintains an official website within the Nebraska State website, www.nebraska.gov. There, the Defendant reported that in 2016 the total number of registered voters in Nebraska was 1,211,113. The challenged statute, Neb. Rev. Stat. § 32-618(2), would thus require Plaintiff Bernbeck to obtain the signatures of 10% of this number of registered voters, or 121,112 signatures - or more if registration increases during the election year - to achieve nomination as an Independent candidate for State Treasurer. No legitimate state purpose requires this excessively high number of signatures.

11. The challenged statute is also of recent origin. The 10% signature requirement became operative in 2016. Prior to adoption of Neb. Rev. Stat. § 32-618, the law of Nebraska required that an Independent candidate present 4,000 signatures, with at least 750 obtained in each congressional district. L.B. 874 Sec. 2 (Laws 2016) and predecessor version of Neb. Rev. Stat. § 32-618. The new state requirement of § 32-618 imposes an increase of more than 3,000% in the number of signatures required. But no newly discovered or different legitimate state interest has been identified to justify this onerous new requirement.

12. The law challenged here severely burdens Plaintiffs' well-established

constitutional rights under the First and Fourteenth Amendments in many ways:

(A) Other than Nebraska, no state requires more than 3% of the signatures of the last gubernatorial vote for a statewide independent. The challenged law makes Nebraska an outlier when compared with other states and their requirements for ballot access by an Independent candidate. And as the Supreme Court held in *Storer v. Brown*, 415 U.S. 724, 739 (1974), a signature requirement greater than 5% "would be in excess percentagewise, of anything the Court has approved to date as a precondition to an independent's securing a place on the ballot."

(B) Access to the ballot is rendered complicated, costly, and difficult to achieve, and political speech is thereby dampened and chilled by the challenged law. The challenged 10% signature requirement drains human and financial resources by preventing their expenditure on political speech and requiring expenditure of those resources on signature gathering. The cost to gather signatures has been estimated at $1.50 to $3.50 per signature. *Green Party of Tennessee v. Hargett,* 882 F.Supp.2d 959, 978 (M.D. Tenn. 2012).

(C) The burdens imposed on Independent candidates are inconsistent with other provisions of Nebraska election law. Specifically, the number of signatures of electors required to form a new political party and allow it to place the name of a candidate for Governor on the ballot is only 1% of the total vote cast for the

office of Governor in the last General Election. Neb. Rev. Stat. § 32-716. The *Official Report of the Nebraska Board of Canvassers* reported that the total number of votes cast in the last gubernatorial election was 540,202 votes. *See*, http://www.sos.ne.gov/elec/2014/elections.html, and "General Election Official Results" link to this report. Accordingly, 5,403 petition signatures would be required to form a new political party. That is only 4.46% of the number required to put Plaintiff Bernbeck's name on the ballot as an Independent candidate under the 10% requirement of Neb. Rev. Stat. § 32-618(2). Candidates for nonpartisan offices seeking nomination by petition must follow this 10% requirement but "not to exceed two thousand" signatures. Neb. Rev. Stat. 32-618(1)(a). Candidates for the Board of Regents must follow this 10% requirement but "not to exceed one thousand" signatures. Neb. Rev. Stat. 32-618(1)(b). Yet Plaintiff Bernbeck and similarly situated Independent candidates must follow the 10% requirement without a similar cap. No compelling state interest justifies this difference.

(D) Plaintiffs are also adversely affected by Nebraska election laws because they tend to: institutionalize, establish, and give advantages to existing political parties; prevent new political ideas, candidates, and movements; inhibit challenges to entrenched persons and organizations; discourage debate; disfranchise voters who wish to support an Independent candidate for elective office; chill and deafen

Independent candidate political speech, and Independent voter speech in support of such candidates and their ideas; and chill the right to petition the government to place Independent candidates and new ideas before the electorate at elections.

13. Ballot access by Independent candidates is further burdened by the words required to be included upon the ballot by Neb. Rev. Stat. §32-617(3), *i.e.*, "A candidate placed on the ballot by petition shall be termed a candidate by petition. The words BY PETITION shall be printed upon the ballot after the name of each candidate by petition."

14. These words, required for inclusion on the ballot, draw undue attention and negative differentiation to a petition candidate, and it deprives the voter of an immediate awareness that the candidate is an "Independent" and without party affiliation. The requirement suppresses the ability of Independent candidates to communicate their lack of a party affiliation while allowing their adversaries on the ballot, who are affiliated with parties, to communicate the presence of their party affiliation. This differentiation imposes an undue burden and restriction on the ability of Independent candidates to engage in free speech. It also increases the burden on voters who go to the polls with the desire to vote for Independent candidates and to use the ballot to identify them while voting. It does so without any valid or legitimate basis and without serving any compelling state interest.

15. Plaintiffs have standing because each of them faces the clear and present threat of their First and Fourteenth Amendment rights being unduly burdened, of being deprived of the right to engage in political speech, to freely petition and to do so on equal footing with others, and each faces deprivation of the opportunity to participate as a candidate for elective office or the right to vote for an Independent candidate for State Treasurer.

16. On April 30, 2018, Plaintiff Bernbeck met with the Secretary of State and obtained the nominating petition forms. Plaintiff Bernbeck announced his candidacy for State Treasurer on May 17, 2018, following Nebraska's primary election. He announced his candidacy at the State Capital and will proceed with planned media interviews and radio talk shows, and with press releases sent to media outlets. He has prepared a guest editorial which he will attempt to place in the *Omaha World-Herald*. He also plans a website for his campaign. And he has begun the process of gathering signatures needed to place his name upon the partisan ballot for the general election.

17. The requirements of the challenged statutes impose burdens upon Plaintiff Bernbeck and his campaign, and upon his supporters, that are obvious, ominous, and ongoing. They make it prohibitively expensive and essentially impossible for an Independent candidate to achieve ballot access. The injuries

imposed by these burdens cause irreparable infringements on each Plaintiffs' First and Fourteenth constitutional rights.

18. Considering the balance of immediate hardships imposed on the Plaintiffs when compared with any interests of the State of Nebraska examined under a strict scrutiny standard, injunctive relief is warranted. The public interest will be served, and not disserved, by a preliminary and a final, permanent injunction. Unless enjoined, each Plaintiff will suffer irreparable harm.

19. In view of the legal precedent relevant to their claims, and the facts, the probability for the Plaintiffs to succeed on the merits is extremely high, and the burden on the Defendant of compliance with an injunction is extremely low. The public will suffer no harm as there is no threat of election fraud posed by the Bernbeck campaign or the actions of Plaintiffs. Instead the public will be harmed because, like Plaintiffs, Nebraska electors will be deprived of the choice to witness and learn from the candidacy of Plaintiff Bernbeck if the challenged statutes are not stricken.

20. Defendant Gale has exercised, and will exercise in the future, his official authority under color of state law by enforcing the challenged statutes in such a manner as to result in violations of each Plaintiff's well-established First and Fourteenth Amendment constitutional rights as alleged above.

Claim One

21.  The 10% signature requirement of Neb. Rev. Stat. § 32-618(2) is excessive, unreasonable, and not justified as necessary to meet any compelling state interest. Instead, it produces undue burdens upon Plaintiffs, violating their rights guaranteed by the First and Fourteenth Amendments of the United States Constitution as enforced by 42 U.S.C. § 1983.

Claim Two

22.  All allegations above are incorporated herein.

23.  The requirements of Neb. Rev. Stat. § 32-617(3) that a candidate placed on the ballot by petition shall be termed a candidate by petition, and that the words **BY PETITION** shall be printed upon the ballot after the name of each candidate by petition, serve no compelling state interest or purpose, and place undue burdens upon Plaintiffs violating their rights guaranteed by the First and Fourteenth Amendments of the United States Constitution as enforced by 42 U.S.C. § 1983.

Relief Requested

WHEREFORE, Plaintiffs respectfully pray that this Court:

(1) Accept jurisdiction over this case;

(2) Enter a declaratory judgement that the requirement of Neb. Rev. Stat. § 32-618(2) that the number of signatures of registered voters needed to place the

name of an independent candidate for an office upon the partisan ballot for the general election shall be at least ten percent of the registered voters entitled to vote for the office violates rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983;

(3) Enjoin Defendant from enforcing the signature requirements of Neb. Rev. Stat. § 32-618(2) needed to place the name of an independent candidates for office upon the partisan ballot for the general election;

(4) Enter a declaratory judgement that Neb. Rev. Stat. § 32-617(3) that requires that a candidate placed on the ballot by petition be termed a candidate by petition and that the words BY PETITION be printed on the ballot after the name of each candidate by petition violates rights guaranteed to the Plaintiffs by the First and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983;

(5)  Enjoin Defendant from enforcing the "by petition" requirement of Neb. Rev. Stat. § 32-617(3);

(6) Award the Plaintiffs their costs of this action together with their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310*l*(e); and

(7) Retain jurisdiction of this action and grant the Plaintiffs any further relief

which may in the discretion of this Court be necessary and proper.

Respectfully submitted this 29th day of May, 2018.

s/M. Laughlin McDonald
_____
LAUGHLIN McDONALD (*Pro Hac Vice Admission Application Pending*)
American Civil Liberties Union Foundation, Inc.
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
Tel: (404) 500-1235
Fax: (404) 565-2886
lmcdonald@aclu.org

_____
AMY A. MILLER #21050 and
SCOUT RICHTERS #25690
American Civil Liberties Union of Nebraska
134 S. 13th Street # 1010
Lincoln, Nebraska 68508
Tel: (402) 476-8091, ext. 106
amiller@aclunebraska.org
srichters@aclunebraska.org

HERBERT FRIEDMAN #11390
DANIEL H. FRIEDMAN #22293
STEPHEN A. SAEL #25970

Friedman Law Offices, P.C., L.L.O.
3800 Normal Blvd., Suite 200
P.O. Box 82009
Lincoln NE 68501

(402) 476-1093
hfriedman@friedmanlaw.com
dfriedman@friedmanlaw.com
ssael@friedmanlaw.com


Attorneys for Plaintiffs